# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| RAQUEL CRUZ RIVERA<br><br>Plaintiff<br><br>v.<br><br>STRATEGIC LEGAL GROUP PSC<br><br>Defendant | Civil No.<br><br><br>Re: Violations of the Fair Debt Collection Practices Act. |

## CLASS ACTION COMPLAINT

**COMES NOW,** Plaintiff, **Raquel Cruz Rivera**, on behalf of herself and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, all others similarly situated, through the undersigned counsel, and before this Honorable Court respectfully **STATES**, **ALLEGES** and **PRAYS** as follows:

## I. INTRODUCTION

1. This action seeks redress for the unlawful and deceptive collection practices engaged by the Defendant in connection with their efforts to collect on a consumer debt against Plaintiff and others similarly situated (coupled, "Plaintiffs"). Plaintiffs allege that Defendant violated the Fair Debt Collection Practice Act ("FDCPA") by engaging in unlawful and deceptive collection practices. Plaintiffs request declaratory and injunctive relief, as well as monetary, and punitive and actual damages based on violations of 15 U.S.C. §1692.

## II. JURISDICTION AND VENUE

2. Jurisdiction is invoked under the provision 28 U.S.C. §1331 and 15 U.S.C. §1692(k)(d).

1

3. Venue is proper in this District because all the events and omissions giving rise to the claims asserted in the Complaint occurred within this judicial district. In addition, Defendant is domiciled in this District and does business in this District.

### III. THE PARTIES

4. Plaintiff, **Raquel Cruz Rivera**, is a natural person and a citizen of the Commonwealth of Puerto Rico. At all relevant times Plaintiff has resided in the municipality of San Juan, Puerto Rico. Plaintiff is a "consumer" as such term is defined by the FDCPA.

5. Defendant, **Strategic Legal Group PSC** (hereinafter referred as "**Strategic**" or "**Defendant**") is a Professional Corporation registered to do business in the Commonwealth of Puerto Rico. Strategic is also domiciled in San Juan, Puerto Rico with a designated office address of: Citi Tower II, 250 Ponce de Leon, 7th Floor, San Juan, PR 00918. Strategic is a law firm that utilizes the instrumentalities of interstate commerce (i.e., telephone, e-mail, texts, US Mail, etc.) to conduct the business of collecting debts. On behalf of clients, Strategic regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Strategic is a debt collector as such term is defined in 15 U.S.C. §1692a(6).

6. Within the past year Defendant Strategic attempted to collect a consumer debt from Plaintiff.

7. Defendants, **INSURANCE COMPANIES ABC** (hereinafter, "INSURANCE COMPANIES ABC"), are the insurance companies of the Strategic in this Complaint who are liable for the acts against the Plaintiff and are therefore responsible for the damages and acts alleged in this Complaint.

8. Defendants, **JOHN DOE AND JANE DOE,** are fictitious names for unknown persons who participated in the acts and omissions against the Plaintiff and/or who are successors of Strategic, all responsible for the damages suffered by the Plaintiff.

## IV. THE FACTS

### A. *General Allegations*.

9. Plaintiff re-alleges each and every previous allegation as if fully established herein.

10. The Plaintiff is a natural person.

11. Allegedly, on November 26, 2007, Plaintiff entered into a consumer credit transaction with Banco Popular de Puerto Rico (hereinafter referred as the "Consumer Debt").

12. The Plaintiff, as a natural person and allegedly obligated to pay a debt, is a 'Consumer' as such term is defined by 15 U.S.C. §1692a(3).

13. The Consumer Debt, based on a consumer credit card, was used for Plaintiff's personal, household, or family purposes; meaning, that the alleged debt was incurred for the benefit of Plaintiff as well as her family and her household.

14. The Consumer Debt is a "debt" as such term is defined by 15 U.S.C. §1692a(5) as it was incurred for personal, family, or household purposes.

15. Upon information and believe, on June 18, 2015, Banco Popular de Puerto Rico sold the Consumer Debt to Jefferson Capital Systems, LLC.

16. The FDCPA defines the term "debt collector" as including: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," and (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another". *See*, 15 U.S.C. §1692a(6).

17. Strategic is a law firm that utilizes the instrumentalities of interstate commerce (i.e., telephone, e-mail, texts, US Mail, etc.) to conduct the business of collecting debts.

18. On behalf of clients, Strategic regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

19. Strategic is, upon information and believe, associated with Puerto Rico Consumer Debt Management Co., Inc. (hereinafter referred as "PRCDM"). PRCDM is a debt collector. PRCDM's website states that PRCDM "in partnership with its affiliate law firm Strategic Legal Group LLC (SLG), is the largest collection agency in Puerto Rico". *See*, http://cdm-pr.com/home.html, as of September 2, 2021.

20. Strategic, as it concedes in publicly published propaganda and as a result of the nature of its business, is a "debt collector" as such term is defined in 15 U.S.C. §1692a(6).

21. Sometime on/or before October 22, 2020, Jefferson Capital Systems retained Defendant to collect on the alleged Consumer Debt.

22. On October 22, 2020, undersigned counsel's office, on behalf of the Plaintiff, sent a letter to Defendant informing Defendant that Plaintiff was represented by counsel (hereinafter referred as the "October 22 Letter").

23. The October 22 Letter also requested that Defendant cease and desist of all collections attempts against the Plaintiff with respect to the Consumer Debt.

24. On November 11, 2020, via a written letter to Undersigned Counsel's Office, Defendant acknowledged receipt of the October 22 Communication (hereinafter referred as the "November 11 Letter").

25. Notwithstanding: (a) the October 22 Letter which, in turn, informed (i) Strategic of Undersigned Counsel's representation of Plaintiff; and (ii) specifically requested for a cease and

desist of Defendant's collection harassment of Plaintiff; and (b) Defendant's written acknowledgement of the October 22 Letter in the November 11 Letter, Defendant ensued with collection efforts directly against Plaintiff.

26. On March 4, 2021, notwithstanding Undersigned Counsel's legal representation of Plaintiff, Defendant sent Plaintiff – **directly** – a collection letter (hereinafter referred as the "March 4 Letter"). *See*, **Exhibit A**.

27. The March 4 Letter was utilized to convey information regarding the Consumer Debt.

28. The March 4 Letter is a "communication" as such term is defined in 15 U.S.C. §1692a(2).

### B. *Allegations as to Defendant's Lack of Meaningful Involvement.*

29. The March 4 Letter was sent to Plaintiffs by Defendant on behalf of an alleged creditor/client of Defendant. *See*, **Exhibit A**

30. The March 4 Letter was drafted on the letterhead of "Strategic **Legal** Group, PSC". Id.

31. The first sentence of the March 4 Letter informs the Plaintiff that the account in question had been referred to the "***legal offices***" offices of Defendant. Id. (*Our Emphasis Added*).

32. The second sentence of the March 4 Letter refers the Plaintiff to an alleged state court judgement. Id.

33. The third sentence of the March 4 Letter alleges that the amount in question was adjudicated by a "***Sentence***" against Plaintiff entered by a "***Court of the Commonwealth of Puerto Rico.***" Id. (*Our Emphasis Added*).

34. The last sentence of the second paragraph of the March 4 Letter threatens Plaintiff that inaction will result in a legal process, garnishment. Id.

35. A footnote to the March 4 Letter states that Strategic is a "law firm" ("bufete" in the Spanish language).

36. The March 4 Letter, based on its content, is a form letter intended – not as a legal communication based upon the review and with the consent of an attorney - rather, for use as a form collection letter by a collection agency.

37. The March 4 Letter was prepared and sent without meaningful involvement from an attorney of Strategic.

38. The March 4 Letter confirms it was created directly from the information which is electronically stored by Strategic's collection client.

39. Upon information and belief, Defendant merely prepared the March 4 Letter with the most variable information, such as the name of the creditor, the alleged amount due, and the name of the consumer, inserted such information into pre-defined "fields" by a word processor or other computer-driven document assembly software without any meaningful review of an attorney.

40. The March Letter bore Defendant's letterhead, however, no attorney at the law firm meaningfully reviewed or authorized the letter before it was sent to the Plaintiff.

41. The March 4 Letter bore Defendant's letterhead, however, no attorney at the law firm meaningfully reviewed the account balance to determine how the balance was calculated or if the balance was correct before the letter was sent to the Plaintiff.

42. The March 4 Letter bore Defendant's letterhead, however, no attorney at the law firm has knowledge of whether the account balance being sought was correct.

43. The March 4 Letter bore Defendant's letterhead, however, no attorney at the law firm reviewed the collection file or made a determination about the legal validity of the alleged debt before the letter was sent to the Plaintiff.

44. As a salient example of the lack involvement of Defendant in the preparation and revision of the March 4 Letter is that the letter falsely discloses the "client" as "040006 – JCAP MN32.7811."

45. There is no client at Defendant by the name of "040006 – JCAP MN32.7811;" rather, the information is a computer acronym. The information, however, surfaced in the March 4 Letter because the same was merely prepared by a word-processing software that inserts computer acronyms into pre-defined fields.

46. Upon information and belief, before seeking to collect the Consumer Debt under the auspices of a law firm, no attorney at the Defendant actually reviews the statement of Plaintiff's account in a manner which allows the attorney to make certain legal judgments, which in the exercise of ordinary due diligence, an attorney would make in attempting to collect a debt associated with a consumer debt such as: (1) the date the consumer's account was opened (i.e., to determine whether the debt obligation was subject to legal or equitable defenses including applicable statute of limitations); (2) the date of each charge that was applied to the consumer's account; (3) the amount and date of each payment applied to the consumer's account; and (4) the method, rate, and means of computing interest on the consumer's account.

47. Defendant's form collection letters, in the form and content of the March 4 Letter attached as **Exhibit A**, leaves the least sophisticated consumer with the impression that the letters are communications from an attorney.

48. The impression that the March 4 Letter were from an attorney is a false, misleading, and deceptive representation because in fact no attorney at Defendant gave meaningful review of Plaintiff's file.

### C. Allegations as to Violations of Section 1692e(11).

49. The March 4 Letter was: (a) sent in Defendant's letterhead; (b) describes Defendant as a "law firm"; and (c) makes repeated mentions and references to legal proceedings, court sentences, and wage garnishments.

50. The March 4 Letter, however, fails the statutory mandate to disclose to Plaintiff that the communicating party is a "debt collector".

51. The context of the March 4 Letter – disguised as a letter from attorneys – would confuse the least sophisticated consumer as to identify the letter as a communication from a debt collector.

52. Defendant's failure to disclose that it was a "debt collector," in the March 4 Letter, confused Plaintiff and resulted in Plaintiff having to spend time and money to visit counsel and engage counsel to review the March 4 Letter.

53. The time and money spent addressing Defendant's violation of the FDCPA is precisely the statutory risk the FDCPA was intended to avoid. The time the least sophisticated consumer onto believing that the March 4 Letter was mailed by a law firm after meaningful review by an attorney, not merely a form debt collection letter being mailed by a debt collector.

### V. COUNT I - VIOLATION OF *15 U.S.C. § 1692e(3)*

54. Plaintiff re-alleges each and every previous allegation as if fully established herein.

55. Plaintiff brings Count I on her own behalf and on behalf of others similarly situated.

8

56. *15 U.S.C. § 1692e(3)* states:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> …
>
> (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

57. The failure of an attorney-debt collector to give "meaningful review" of a consumer's file before a collection letter is sent violates Section 1692e(3) of the FDCPA. *See*, Clomon v. Jackson, 988 F.2d 1314 (2nd Cir. 1993); *see also*, Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996).

58. The use in the March 4 Letter of the Defendant's Letterhead, the reference in the March 4 Letter to Defendant as a law firm, and the multiple references and mentions in the March 4 Letter to legal proceedings, judgments, and legal consequences (i.e., wage garnishments) gives the least sophisticated consumer the impression that the March 4 Letter is a communication from an attorney.

59. The impression that the March 4 Letter was a communication from an attorney was a false, misleading, or deceptive representation because in fact, no attorney at Defendant's office had reviewed, authorized, or provided a meaningful involvement in the drafting or preparation of the March 4 Letter.

60. The March 4 Letter is a template which - in identical form and substance, other than inserting pre-defined fields such as name and address - is mailed to all Consumers from whom Defendant attempts to collect.

61. The FDCPA prohibits a debt collector from using false, deceptive, or misleading representation or means to collect a debt, including the false representation or implication that any individual is an attorney or that the communication is from an attorney. *See*, 15 U.S.C. § 1692(3).

62. Defendant's false, misleading, and deceptive representations in the March 4 Letter violated 15 U.S.C. § 1692(3).

63. Defendant's false, misleading or deceptive representation that the communication (the March 4 Letter) was from an attorney confused Plaintiff into believing that licensed attorneys had reviewed her file and that further legal action was imminent.

64. As a result of Defendant's false representations and deceptive representations, Plaintiffs suffered tangible and intangible injuries.

65. Amongst Plaintiff's tangible injuries, Plaintiff suffered economic and emotional damages and injuries. For example, because of Defendant's false representation, Plaintiff was forced to incur in the cost and expense of engaging counsel, in a different and unrelated proceeding to this one, to review the March 4 Letter and provide legal advice. Moreover, Plaintiff was disturbed by the false believe that she was not the target of an imminent lawsuit and/or legal proceeding causing severe emotional distress.

66. Additionally, Plaintiff suffered intangible injuries. For example, the confusion, distress, and fear caused by Defendant's false, misleading, and deceptive representations are precisely the sort of abusive debt collection practices which Congress sought to protect in enacting the FDCPA.

67. In addition, further confused and unnerved the Plaintiff because she believed that the March 4 Letter was drafted by a licensed attorney, Plaintiff also retained bankruptcy counsel – in an unrelated proceeding – in order to stay the legal actions threaten in the March 4 Letter.

68. The engagement of counsel, as a result of the confusion created by Defendant's violation of 1692e(3) imposed an economic cost and expense on Plaintiff that but for Defendant's false, misleading and deceptive representations Plaintiff would not have incurred.

69. As a result of Defendant's conduct, Plaintiff is entitled to an award of statutory damages pursuant to *15 U.S.C. §1692k* to remedy the economic damages created by Defendant's conduct.

70. As a result of Defendants' conduct, Plaintiffs are entitled to an award of costs and attorney fees pursuant to *15 U.S.C. §1692k.*

### VI. COUNT II – VIOLATION OF 15 U.S.C. §1692e

71. Plaintiff re-alleges each and every previous allegation as if fully established herein.

72. Plaintiff brings Count II on her own behalf and on behalf of others similarly situated

73. *15 U.S.C. § 1692e(11)* provides as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> …
> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

*See,* 15 U.S.C. § 1692e(11).

74. Section 1692e(11) incorporate two separate and distinct mandates upon debt collectors. First, in the "***initial communication***" the debt collector must disclose that: (a) the communicating party is a "debt collector," and (b) the communicating party "is attempting to

11

collect a debt and that any information will be used for that purpose". *See*, 15 U.S.C. § 1692e(11), *supra*. Second, in any "**subsequent communications**" the debt collector must disclose that the "communication is from a debt collector". Id.

75. The FDCPA mandates strict compliance with its disclosure requirements of 1692e(11). *See*, Masciarelli v. Boudreau & Associates, 529 F.Supp.2d 183 (D. Mass. 2007) ("a collection agent must follow the disclosure requirement of identifying himself as a debt collector in all communication...").

76. The March 4 Letter was a communication from Defendant that conveyed information regarding the Consumer Debt.

77. The March 4 Letter was a "communication" as such term is defined in the FDCPA.

78. The March 4 Letter was not the "initial communication" from Defendant. *See*, Complaint. ¶22-25, herein.

79. The March 4 Letter was a "subsequent communication" as per Section 1692e(11) of the FDCPA.

80. Pursuant to the mandates of 1692e(11) of the FDCPA, Defendant was obligated to disclose to Plaintiff that it was a "debt collector" in the March 4 Letter and/or any other "subsequent communication."

81. The March 4 Letter, a "subsequent communication" fails to disclose – as required by the FDCPA – that Defendant is a "debt collector" or that the March 4 Letter was sent by a "debt collector". Id.

82. Defendant's failure to disclose its identity as a "debt collector" – as required by the FDCPA – is a false, deceptive, or misleading representation in connection with the collection of a debt.

83. Defendant's failure to disclose that Defendant is a "debt collector," when considered in the context of the March 4 Letter - embedded in the letterhead of a law firm with multiple references in the letter to state court judgements, court proceedings, and legal garnishments – results in the confusion to the least sophisticated consumer of precisely who is collecting from her.

84. Failure to disclose in a subsequent communication that the communicating party is a "debt collector" impairs the decision making process of the least sophisticated consumer.

85. The March 4 Letter, because it failed to disclose to Plaintiff that Defendant was a "debt collector" was a false, deceptive, and misleading representation in violation of the FDCPA.

86. As a result of Defendant's false representations and deceptive representations, Plaintiff was in fact mislead and suffered tangible and intangible injuries.

87. Amongst Plaintiff's tangible injuries, Plaintiff suffered economic and emotional damages and injuries. For example, because of Defendant failed to accurately disclose that it was a "debt collector" Plaintiff was forced to incur in the cost and expense of engaging counsel, in a different and unrelated proceeding to this one, to review the March 4 Letter and provide legal advice as to who was communicating with her and the legal status of the debt (i.e. debt collection, legal proceeding, etc.). Moreover, Plaintiff was disturbed and confused by the lack of information as to the capacity of the party communicating with her, their ensuing intentions as well as the legal consequences to Plaintiff. This confusion and disturbance created by Defendant's failure to disclose their capacity as a debt collector, as required by the FDCPA, caused Plaintiff severe emotional distress.

88. Plaintiff also suffered intangible injuries. For example, the confusion, distress, and fear caused by Defendant's false, misleading, and deceptive representations are precisely the sort

of abusive debt collection practices which Congress sought to protect in enacting the FDCPA. Because Congress sought to avoid collection practices which disrupt a debtor's life, Congress mandated that communicating parties disclose their capacity as "debt collectors".

89. Defendant's failure resulted in precisely the harm Congress sought to avoid.

90. Because of Defendant's false, misleading or deceptive representations Plaintiff was induced to the believe that the Consumer Debt had been advanced to a licensed attorney for legal proceedings, as opposed to debt collection by a debt collector.

91. As a result of the fear created by Defendant false, misleading, or deceptive representations and because the March 4 Letter did not specify if it came from a "debt collector", Plaintiff was forced to engage counsel to review the March 4 Letter to determine if the communication was from a debt collector or other party. These false, misleading or deceptive representations by Defendant imposed economic costs and expenses on Plaintiff that would not, but for Defendant's actions, have been incurred by Plaintiff.

92. As a result of Defendant's conduct, Plaintiff is entitled to an award of statutory damages pursuant to *15 U.S.C. §1692k* to remedy the economic damages caused by Defendant's conduct.

93. As a result of Defendant's conduct, Plaintiff is entitled to an award of costs and attorney fees pursuant to *15 U.S.C. §1692k*.

### VII. CLASS ALLEGATIONS

94. Plaintiff re-alleges each and every previous allegation as if fully established herein.

95. Plaintiff brings Count I and Count II on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

96. The Class consists of: (a) all natural persons with a Puerto Rico address; (b) who were sent a letter in the forms represented by **Exhibit A**; (c) on or after a date one year prior to the filing of this action; and (d) on or before a date 20 days after the filing of this Complaint.

97. The class members are so numerous that joinder is impracticable.

98. On information and belief, based on the use of a form letter such as the one attached hereto as **Exhibit A**, there are more than 1,000 natural persons with a Puerto Rico address in the class defined herein.

99. There are questions of law and fact common to all class members, which predominate over any question that affect only individual class members.

100. The predominant questions are:

   (a) Whether **Exhibit A** is a form letter.

   (b) Whether **Exhibit A** violates the FDCPA; and

   (c) The liability of Strategic for the action of sending **Exhibit A**.

101. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

102. Plaintiff will fairly and adequate represent the interest of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

103. A class action is superior to other alternative methods of adjudicating this dispute, in that:

   a. Individual cases are not economically feasible,

   b. Many consumers may not realize their rights are violated, and

   c. Congress prescribed class actions as a principal enforcement mechanism under the FDCPA.

**WHEREFORE**, in view of the foregoing, Plaintiff respectfully requests from this Honorable Court to enter a judgment in favor of the Plaintiff and the class members, granting Plaintiff and the class members the remedies requested in this Complaint and such other remedies as may be fair and equitable.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 2nd day of September 2021.

**THE BATISTA LAW GROUP, PSC.**
P.O. Box 191059
San Juan, PR. 00919
Telephone: (787) 620-2856
Facsimile: (787) 777-1589

/s/ Jesus E. Batista Sánchez
Jesus E. Batista Sánchez, Esq.
USDC-PR No. 227014
E-mail: jeb@batistasanchez.com

/s/ William Rivera Vélez
William Rivera Vélez, Esq.
USDC-PR No. 229408
E-mail: wrv@batistasanchez.com